

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-7061
Re: Whether the law requires
the Comptroller to issue
a warrant in payment of
the salary of Harry Benge
Crozier for the entire
month of January, 1946;
and a related question.

The Regular Session of the Forty-ninth Legislature, convened in Austin on the 9th day of January, 1945, and adjourned sine die on the 5th day of June, 1945, pursuant to House Concurrent Resolution No. 99, which was adopted by the House of Representatives on May 31, 1945, and concurred in by the Senate on June 1, 1945. (Acts 1945, 49th Leg., p. 1029)

On June 2, 1945, the Senate adopted Senate Resolution No. 88, which resolved that "the Forty-ninth Senate of Texas shall meet and convene in session in the Senate Chamber at Austin, Texas on the eighth day of January, 1946, at 12 o'clock noon for the purpose of acting on and confirming or rejecting such appointments and nominations of the Governor as the Constitution and laws of the State require the Senate to act upon and confirm or reject." (Senate Journal, p. 1279)

On June 5, 1945, it was moved and carried by the Senate that "the Regular Session of the Senate adjourn sine die for legislative purposes, subject to the provisions of S. R. 88." (Senate Journal, p. 1339)

Pursuant to such Senate Resolution and motion, and without any call from the Governor, the Senators met in the Senate Chamber on the 8th day of January, 1946. After a quorum was obtained, a request was made of the Governor that

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

he present to them his nominations for various offices filled by him after the adjournment of the Legislature in June, 1945. Thereupon the group "stood at ease" until January 21, 1946.

The Governor failed to present any nominations. A list of his recess appointees was obtained from the Secretary of State, and in an attempted executive session, at 3:45 P.M. on January 21, 1946, the name of Harry Benge Crozier as a member and Chairman of the Texas Unemployment Compensation Commission for the term expiring November 26, 1946, was rejected, and the Secretary of the Senate has presented you with a certificate to this effect. All other names were confirmed.

You advise that the Texas Unemployment Compensation Commission payroll for the month of January has been presented to you for warrants to issue in payment thereof. This payroll carries the name of the Chairman, Harry Benge Crozier, for the full month of January. You have asked the opinion of this department on the following questions:

1. Does the law require your department to issue a warrant for the payment of Mr. Crozier's salary for the entire month of January in view of the action by the Senate as certified by the Secretary of the Senate?

2. Are you prohibited by law from accepting the action of the Senate on Mr. Crozier's appointment as valid on its face?

While the immediate question presented in this request is whether the Comptroller is required to issue a warrant in payment of the appointee's salary, it poses the ultimate question of the legality of the meeting of the Senators at which the appointee was rejected. If such meeting was invalid, the appointee, having duly qualified, holds his office legally until rejected by the Senate at a valid session. If the session was valid, then the appointee's rejection operates to vacate the office and of course no salary therefor is authorized.

This meeting of the Senators was valid unless it plainly contravenes the Constitution of the State of Texas and recognizing that it was a sincere attempt by chosen representatives of the people to discharge their constitutional

duties, its validity has been considered in the light of the well-settled principles which have guided the courts in their guardianship of the organic law.

Paramount of such principles is that the power of the Legislature of Texas, of which the Senate is an integral part, is virtually absolute and is restricted only by express or necessarily implied prohibitions of the Constitution. It is said that the State Constitution is an instrument of rules and maxims in accordance with which the otherwise absolute powers of sovereignty must be exercised. Parenthetically, it may be noted that the Congress of the United States differs in its function from the State Legislature in that the Federal Constitution is one of enumerated powers.

Because of this broad power and also because the Legislature is a branch of the Government co-ordinate with the judiciary, the courts will indulge the presumption that the Legislature intended no violation of the Constitution and will uphold any of its acts where there is a tenable basis for so doing. This presumption, however, is not conclusive and when an Act of the Legislature, or of either the Senate or the House of Representatives, plainly contravenes the Constitution, there is a compelling duty to hold that Act invalid. There is, then, to consider this meeting of the Senators in the light of the pertinent provisions of the Constitution of Texas.

The people are sovereign and in the exercise of their inherent power, have created a Government and divided the powers thereof into three distinct departments, each of which is confided to a separate body of magistracy -- those which are Legislative to one; those which are Executive to another; and those which are Judicial to another. Article 2, Section 1, of the Constitution, after defining such separate departments, provides:

"And no person, or collection of persons, be-
ing of one of these departments, shall exercise
any power properly attached to either of the
others, except in the instances herein express-
ly permitted."

This language is an inhibition. It is strong language, intended to prevent one of the said branches of the State Government from undertaking to do what the organic law of the State directs shall or may be done only by another.

Relating to the convening of the Legislature, and the order of business of its regular session, Article 3, Section 5, of the Constitution provides:

"The Legislature shall meet every two years at such time as may be provided by law and at other times when convened by the Governor. When convened in regular session, the first thirty days thereof shall be devoted to the introducing of bills and resolutions, acting upon emergency appropriations, passing upon the confirmation of the recess appointees of the Governor and such emergency matters as may be submitted by the Governor in special messages to the Legislature; provided that during the succeeding thirty days of the regular session of the Legislature the various committees of each House shall hold hearings to consider all bills and resolutions and other matters then pending; and such emergency matters as may be submitted by the Governor; provided further that during the following sixty days the Legislature shall act upon such bills and resolutions as may be then pending and upon such emergency matters as may be submitted by the Governor in special messages to the Legislature; provided however, either House may otherwise determine its order of business by an affirmative vote of four-fifths of its membership." (Emphasis added)

It would appear from the underlined portion of the above that the Legislature may not be convened after an adjournment sine die except by the Governor. When the Constitution speaks, the Legislature can act only in the manner and to the extent provided and the rule that "an expressed intention is an implied exclusion" is held to be as applicable to Constitutions as to Statutes (Arnold v. Leonard, 273 S.W. 799). It is said that "the affirmative prescriptions and general arrangements of the Constitution are ... fruitful of restraints upon the Legislature," and that "every positive direction contains an implication against anything contrary to it." (Cooley's Constitutional Limitations, 8th Ed., p. 177) Under similar constitutional provisions it has been held that when the Legislature has adjourned at the expiration of its term, it cannot again be lawfully called together except by the Governor. (Dyer v. Shaw, 281 Pac. 776, 139 Okla.

165; Simpson v. Hill, 263 Pac. 635, 128 Okla. 269; French v. State Senate, 80 Pac. 1031, 146 Cal. 604)

However, the right of the Legislature to convene itself is not strictly the question, but whether one House can convene without the other is controlling. Section 5, above, indicates beyond any doubt that the legislative branch of the Government is composed of two integral parts -- the House of Representatives and the Senate -- and that the two combined are the Legislature; that neither House can have any validity or being except when convened and organized as the organic law of the State provides. Action on the named matters can be taken only when the Senate is duly in session and duly organized, and there is nothing in the Constitution authorizing such organization except when the House of Representatives convenes also and is organized as the Constitution provides. This provision negatives the idea that, for any of the purposes named therein, either House can have an independent session.

The authority of the Governor to convene the Legislature in special session would not appear to admit of his convening only one House. Article 4, Section 8, of the Constitution, provides as follows:

"The Governor may, on extraordinary occasions, convene the Legislature at the seat of Government, or at a different place, in case that should be in possession of the public enemy, or in case of the prevalence of disease thereat. This Proclamation therefor shall state specifically the purpose for which the Legislature is convened." (Emphasis added)

The Legislature is here treated (as it is in almost all of the Constitution's seventeen articles) as a unit and neither House may be called separately. It is also observed that the above provision contemplates special sessions of the Legislature only on "extraordinary occasions," and that the Governor's proclamation shall state specifically the purpose for which the Legislature is convened. Further, in Article 3, Section 40, the Legislature when convened in special session, is considered as a unit and as such is restricted in its consideration to subjects designated by the Governor.

Another constitutional provision which views the Legislature as a unit and clearly intends that both Houses

shall be in session concurrently is Section 17 of Article 3, which provides:

> "Neither House shall, without the consent of the other, adjourn for more than three days, nor to any other place than that where the Legislature may be sitting."

Conversely, there is a clear inference that neither House may convene without the other under the provisions of Article 3, relating to the Legislative Department, nor is this provision qualified by any such expression as "shall not adjourn for legislative purposes." The prohibition against such adjournment without the consent of the other House is unqualified. The Regular Session of the Forty-ninth Legislature was terminated by sine die adjournment resolution which was adopted by the House of Representatives on May 31, 1945, and by the Senate on June 1, 1945. There were no reservations in this resolution so adopted, as is seen from its language:

> "Be it resolved by the House of Representatives, the Senate concurring, That the Regular Session of the Forty-Ninth Legislature shall stand adjourned sine die at 12:00 o'clock noon on Tuesday, June 5, 1945."

This resolution exhausted the constitutional powers of the Forty-ninth Legislature for all purposes unless and until it should be called into session in the manner dictated by the Constitution -- that is, by the call of the Governor. It cannot be held that the mental reservations of the Senators as exhibited by their subsequent resolution on June 2, 1945, which resolution was not concurred in by the House of Representatives, to meet on January 8, 1946, had the effect of setting aside and negativing the plain dictates of the Constitution.

The provisions of Article 15 of the Constitution, relating to the impeachment powers of both branches of the Legislature are not germane to this opinion, nor is the case of Ferguson v. Maddox, (263 S.W. 888) relating to such powers. No question of the power of the Legislature to convene itself was involved in that case and certainly no question of the power of one branch only of the Legislature to convene itself was raised.

Article 4, Section 12, of the Constitution of Texas, specifically provides for the Governor's making appointments to fill vacancies and for the confirmation of his appointments by the Senate as follows:

"All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law, by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the Senate, the said appointee or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during the session of the Senate, the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate; but may appoint some other person to fill the vacancy until the next session of the Senate or until the regular election to said office, should it sooner occur. Appointments to vacancies in office elective by the people shall only continue until the first general election thereafter." (Emphasis added)

In the under lined portions of the above, it is manifest that no special session of the Senate for the purpose of confirming appointments was ever intended. While a session and a recess of the Senate are mentioned, it cannot possibly be inferred that this casual reference was intended to authorize a separate and independent session. On the contrary, it does not contemplate the Senate's continuing in session until the Governor's appointments have been confirmed. By its terms, if there is no confirmation "during the session of the Senate" the Governor "may appoint some other person to fill the vacancy until the next session of the Senate or until the next regular election to said office, should it sooner occur." It appears obvious that the "next session" contemplated was in fact the next session of the Legislature and that the term "the next session of the Senate" was used only because the provision was dealing with a particular function of that House.

Further, it should be noted that in the arrangement of the Constitution this provision is found in the article relating to the Executive Department, and certainly, incidental references to the Legislature, or either of its Houses, will not operate to modify or enlarge the specific provisions of the preceding Article 3, relating to the Legislative Department.

In the case of Simpson v. Hill (supra), the Supreme Court of Oklahoma quoted with approval from the holding of the Court of Appeals of New York (Court of last resort in that state) that "the Assembly" (comparable to our House of Representatives) has no constitutional entity except as a branch of the Legislature, as follows:

> "We have shown that every reference in the Constitution to 'the Assembly' is a definite and specific reference to it as one of the 'houses' of the Legislature. The Constitution does not recognize any entity under the name of 'the Assembly,' except that body which exists as a constituent branch of the Legislature. There is but one Assembly. It is 'the Assembly.' It is not one organism in respect to article 3, (the legislative provision -- ours), and another when referred to in article 6, (the impeachment provision -- ours), of the Constitution.

> "The mere fact that article 6 conferred upon the Assembly the power of impeachment ... does not operate as a metamorphosis of the nature of that body. It is still 'the Assembly' and nothing more. It remains a constituent branch of the Legislature. It is not transformed into anything other or different than an integral part of the Legislature; a branch of; one of its houses; endowed, if you please, with the quasi judicial power of impeachment, but still acting merely within the orbit which the Constitution has assigned to it, as a part of the Legislature, and governed by the limitations imposed upon the Legislature. ...

> "Nowhere in the State Constitution is the body which we know as 'the Assembly' referred to by any other characterization than as 'the Assembly.' ...

Nowhere in article 6 of the Constitution (the impeachment provisions -- ours) which confers such alleged judicial power, nor in any other article of the Constitution, is there to be found a word or a syllable permitting the inference that when the Assembly acts as an accusing body, it is absolved from obedience to the beneficient limitations and restraints of the Constitution, which specifically and in clear and unambiguous language refer to and affect 'the Assembly,' ..."

In the above Section 12 of Article 4, the Constitution clearly contemplates that appointments are necessary while the Legislature is not in session. It provides for appointees' validly holding their respective offices until the next session or next election, and there is no time limitation expressed. It is emphasized that under this provision the Legislature could adjourn without having confirmed an appointee and the Governor could immediately after adjournment appoint "some other person" who would hold office "until the next session." Such an appointee's acts are as valid and binding on the State before confirmation as they are thereafter.

The foregoing considered, it must be concluded that any separate and special meeting of the Senators is not a valid session of the Texas State Senate under the provisions of the Constitution and every attempted official act of the Senators thus assembled is a nullity. It is not authorized by Article 4, Section 12; it contravenes Article 3, Section 5; and it is repugnant to Article 3, Sections 17 and 40, and Article 4, Section 8, and there are other propositions supporting such a conclusion. For example, an attempt of the Senate to convene itself could be held an encroachment on the powers of the Executive Department in violation of Article 2, Section 1. Even if a sine die adjournment may be qualified (which is doubtful), it is certainly not possible for only one House to qualify it after it is passed by both of them. Further, it is contrary to the practice and acquiescence of the Legislature for almost one hundred years.

It is the opinion of this office, therefore, that (1) the Comptroller is required to issue a warrantto pay the

Honorable George H. Sheppard, page 10

salary of Mr. Harry Benge Crozier for the entire month of January, and (2) that it is not required that the action of the Senators be accepted as valid on its face.

Very truly yours

Grover Sellers
ATTORNEY GENERAL OF TEXAS

GS:db

APPROVED JAN 20 1946

ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE